UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAUREN A.,

                    Plaintiff,              Civil Action No. 22-11144

v.                                          Judith E. Levy
                                            United States District Judge

COMMISSIONER OF                             David R. Grand
SOCIAL SECURITY,                            United States Magistrate Judge

                    Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)

Plaintiff Lauren A. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 12, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Plaintiff filed her applications on October 2, 2019, and alleged a disability onset date of September 17, 2018, at which time she was 24 years old.  (PageID.85, 100, 294, 298).[1]  At 5'5" tall, she weighed approximately 290 pounds during the relevant time period.  (PageID.85).  She completed a high school education.  (PageID.104).  She currently lives in a house with her two children, as well as a roommate and two of his children.  (PageID.67-68).  Previously, Plaintiff worked as an injection molding machine operator, a line assembly utility worker, a nurse assistant, and a hospital cleaner.  (PageID.80-81, 95-96).  Plaintiff's alleged disabling conditions include diabetes, obesity, extensive skin lesions, thyroid/graves, and chronic back pain.  (PageID.85-86).

After Plaintiff's applications for SSI and DIB were denied at the initial level on April 1, 2020 (PageID.98, 113), she timely requested an administrative hearing, which was held on March 4, 2021, before ALJ Nicole Quandt (PageID.61-84).  Plaintiff, who was represented by attorney Patrick Cahill, testified at the hearing, as did vocational expert ("VE") Amy Taylor.  (*Id.*).  On March 17, 2021, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act.  (PageID.42-60).  On April 8, 2022, the Appeals Council denied review.  (PageID.31-36).  Plaintiff timely filed for judicial review of the final decision on May 25, 2022.  (ECF No. 1).

---

[1] Standalone citations to "PageID. __" are all to the administrative transcript in this case, which can be found at ECF No. 9.

2

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

3

> Step Five:  Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011)

(citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d

528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four

steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not

disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human

Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not

disabled under the Act.  At Step One, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the alleged onset date of September 17, 2018.

(PageID.47).  At Step Two, the ALJ found that Plaintiff had severe impairments of

degenerative disc disease, carpal tunnel syndrome, hidradenitis suppurativa, and obesity.

(*Id.*).  At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone

or in combination, do not meet or medically equal a listed impairment.  (PageID.48).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding

that she is capable of performing sedentary work, with the following additional limitations:

> [S]he can occasionally operate foot controls and occasionally climb
> ramps and stairs; and never climb ladders, ropes, or scaffolds.  She can
> occasionally balance, stoop, kneel, crouch and crawl.  She can never
> work at unprotected heights or around moving mechanical parts, no
> work in concentrated wetness or vibration.  She can frequently handle
> and finger bilaterally.

(PageID.49).

4

At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (PageID.52-53).  At Step Five, the ALJ found, based in part on the VE's testimony, that given Plaintiff's age, education, work experience, and RFC, she was capable of performing unskilled sedentary work as a document preparer (19,000 jobs nationally), security system monitor (3,000 jobs), and address clerk (3,000 jobs).  (PageID.53-54).  Thus, the ALJ concluded that Plaintiff was disabled under the Act.  (PageID.54).

### C.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'"  *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (internal citations omitted).

5

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

In her motion for summary judgment, Plaintiff mainly argues that the ALJ failed to properly evaluate the medical opinion of treating neurologist, Dr. Nael Tarakji, M.D., and therefore substantial evidence does not support the ALJ's RFC determination. (ECF No. 12, PageID.943-58).[2]

---

[2] The Court notes that Plaintiff's motion relies primarily on Dr. Tarakji's opined limitations, while failing to meaningfully address the treatment notes and medical opinions from different medical sources. For instance, her motion does not mention, much less challenge, the ALJ's reliance on the two opinions by the state agency reviewing physicians, which the ALJ found partially

In this case, Dr. Tarakji issued an opinion on January 26, 2021, in the form of a "Medical Source Statement (Physical)." (PageID.917).  Relevant here, Dr. Tarakji opined that Plaintiff's symptoms affected her "attention and concentration" such that she would likely be "off task" for "25% or more" of the workday, and that she was incapable of even "low stress" jobs due to "chronic back pain" and "carpal tunnel syndrome." (PageID.918). Next, as to sitting, standing, and/or walking, he opined that Plaintiff can walk "1-2 block[s]" "without rest or severe pain'"; she can sit for 15 minutes at one time before needing to get up; she can stand for 15 minutes at one time before needing to sit down or walk around; she can "sit" and "stand/walk" for "less than 2 hours" total with normal breaks in an 8-hour workday; she needs to walk for 5 minutes every 20 minutes; she needs a job that permits shifting positions "at will" from sitting, standing, or walking; she needs to take 15 minutes of unscheduled breaks "often" during an 8-hour workday; and she does not need to elevate her legs. (*Id.*).  Finally, as for reaching, handling, and/or fingering, Dr. Tarakji opined that she can occasionally lift less than 10 pounds; she can grasp, turn, and twist objects with her right hand for 20% and with her left hand for 30% of an 8-hour workday; she can perform fine manipulations with her right fingers for 10% and left fingers for 20% of an 8-hour workday; and she can reach including overhead with her right arm for 30% and left arm for 40% of an 8-hour workday. (PageID.920).  As a result of her impairments, Dr. Tarakji opined that Plaintiff is likely to be absent from work for more

---

persuasive, and makes only passing references to consultative examiner Dr. Harold Nims, D.O.'s physical exam and opinion of only "mild" limitations, which the ALJ found persuasive.  The Court will discuss the salient evidence below.

than four days per month.  (*Id.*).

The ALJ found Dr. Tarakji's opinion partially persuasive, reasoning as follows:

> The claimant's neurologist, Nael Tarakji, MD completed a medical source statement in January 2021 and indicated the claimant was limited to walking 1-2 blocks, sitting and standing 15 minutes at one time for less than 2 hours each in an 8-hour workday.  She did not need to use a cane but must walk every 20 minutes for 5 minutes in an 8-hour work day (for a total of 2 hours of walking) and she would often need 15 [minute] breaks.  She could occasionally lift and carry up to 10 pounds and was limited in handling, fingering, and reaching bilaterally.  She was expected to be absent for more than 4 days per month.  This statement is ***partially persuasive as the record support[s] no need for a cane and lifting limitations of 10 pounds occasionally which are consistent with the record as a whole*** including the claimant['s] testimony that she lifted her 25 pound child with some difficulty and did not use a cane to ambulate.  However, ***the statement is somewhat internally inconsistent regarding walking.  Specifically, 2 hours worth of walking breaks were recommended but also less than two hours of walking total in an 8-hour workday.   Some terms used are vocationally vague including "often" when asked how often 15 minute breaks were needed.  Finally, absences of 4 days a month are extreme and not supported by this author['s] treatment records showing conservative treatment recommendations for carpal tunnel syndrome and examination findings showing normal gait, normal tone, bulk and muscle strength of all muscle groups at 5/5.  Deep tendon reflexes were 1+ in the upper extremities and diminished in the lower extremities with downgoing toes bilaterally and her gait was normal.***

(PageID.51) (emphasis added).

Based on the above, Plaintiff contends that the ALJ failed to properly evaluate Dr. Tarakji's opinion, but the Court finds no reversible error in this regard.  First, Plaintiff argues that the ALJ erred when "she did not consider and articulate the 'other most persuasive factors' when evaluating Dr. Tarakji's opinion[,] specifically, the treating relationship and nature and frequency of treatment." (ECF No. 12, PageID.957).  The

problem with her argument is that the ALJ was not required to do so under the applicable regulatory criteria for evaluating medical opinions set forth at 20 C.F.R. § 404.1520c as to her claims filed in October 2019.  *See* 20 C.F.R. § 404.1520c. ("For claims filed . . . on or after March 27, 2017, . . . [w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from your medical sources.").  Specifically, that regulation provides that ALJs must rely on the following factors when evaluating medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  20 C.F.R. § 404.1520c(c).  Among these, "the most important factors" in this analysis are a medical opinion's **supportability** and **consistency** with other sources in the record, and so the ALJ "***may, but [is] not required to, explain how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . .***" *Id.* § 404.1520c(b)(2) (emphasis added); *see Ingram v. Comm'r of Soc. Sec.*, No. 2:21-CV-10267, 2022 WL 1734936, at *7 (E.D. Mich. Jan. 26, 2022).[3]  In other words, that the ALJ did not explicitly discuss Plaintiff's "treating relationship and nature and frequency of treatment" with Dr. Tarakji is not reversible error where the ALJ's decision reflects reasoned consideration and articulation of the two most important factors of supportability and consistency under paragraphs (c)(1)

---

[3] Indeed, 20 C.F.R. § 404.1520c(b)(3) makes clear that the ALJ is only required to "articulate" her consideration of the "other most persuasive factors in paragraphs (c)(3) through (c)(5)" when finding that "two or more medical opinions . . .  about the same issue" are "both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  Plaintiff does not raise an argument under § 404.1520c(b)(3); to the contrary, she argues that the ALJ "gave persuasive weight – not partially persuasive weight – to consultative examiner Dr. Harold Nims DO, while finding [Plaintiff's] treating neurologist Dr. Tarakji's opinion to be partially persuasive."  (ECF No. 12, PageID.957).

and (c)(2).

Here, a review of the ALJ's decision makes clear that she not only properly articulated her consideration of the supportability and consistency of Dr. Tarakji's opinion, but that substantial evidence supports her finding that the opinion was "persuasive" only with respect to its finding that Plaintiff had "no need for a cane" and that she was subject to "lifting limitations of 10 pounds occasionally," and therefore was not persuasive as to its other imposed limitations.  (PageID.51).

The Court starts with the aspects of Dr. Tarakji's opinion that the ALJ addressed more head-on.  Specifically, the ALJ reasonably explained that Dr. Tarakji's statement as to "walking" was "internally inconsistent" because he had opined that, in an 8-hour workday, she could only "stand/walk" for "*less than 2 hours,*" but at the same time required her to walk for *at least 2 hours* based on his assessment that she must "walk for 5 minutes every 20 minutes," *i.e.*, 15 minutes every 1 hour for a total of 2 hours in an 8-hour workday.  (PageID.51 (emphasis added); *see* PageID.918-19).  The ALJ then highlighted a similar ambiguity in Dr. Tarakji's use of "vocationally vague" terms such as "often" in response to a questionnaire of "how *often*" he believed Plaintiff needed to take unscheduled breaks in an 8-hour workday.  (PageID.51; PageID.919 (emphasis in original) (Question: "Will your patient sometimes need to take unscheduled breaks during an 8-hour working day? . . . If yes, 1) how *often* do you think this will happen?" Answer: "Often").  Moreover, the ALJ stated that Dr. Tarakji's opined limitations such as needing "absences of 4 days a month" were "extreme" and "not supported by this author[']s treatment records"

recommending "conservative treatment"[4] for Plaintiff's carpal tunnel syndrome and "examination findings showing normal gait, normal tone, bulk and muscle strength of all muscle groups at 5/5."  (PageID.51; *see* PageID.925 (Dr. Tarakji recommending in November 2020 that there was "[n]o need for carpal tunnel surgery" and to instead "use hand braces with B6 vitamin"; PageID.929 (Dr. Tarakji's physical exam findings in September 2020 including "normal tone, bulk and muscle strength of all muscle groups at 5/5," "normal gait," and "negative straight leg maneuver").  Finally, as discussed in greater detail below, while the ALJ found that Dr. Tarakji's opinion assessing "no need for a cane and lifting limitations of 10 pounds occasionally" were "consistent with the record as a whole," the ALJ's finding that the remainder of his opined limitations were inconsistent with the record, and therefore properly excluded from the RFC, is supported by substantial evidence in the record.  (PageID.521).

Indeed, Plaintiff's main argument appears to be a challenge to the ALJ's RFC finding as inconsistent with Dr. Tarakji's opinion as to (1) her need to alternate between sitting and standing; (2) her ability to handle, feel, and/or reach; and (3) her need for time off tasks and absences.  (ECF No. 12, PageID.943-54).[5]  Yet, substantial evidence in the

---

[4] Plaintiff argues that that "[t]here is no indication in SSA's Rules and Regulations which require a surgical recommendation in order for an ALJ to rely on medical opinions." (ECF No. 12, PageID.956).  But the ALJ did not state that a surgical recommendation was required to rely on an opinion.  Rather, the ALJ merely determined that Dr. Tarakji's recommendation for no surgery and conservative treatment such as hand braces and vitamins did not support the "extreme" limitations he assessed. *See Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808-09 (6th Cir. 2012) (conservative and routine treatment is a valid consideration in assessing limitations).

[5] In challenging the RFC, Plaintiff asserts that "[t]he ALJ made an erroneous step five determination that is unsupported by the substantial weight of the evidence; the burden is on the Commissioner at step five." (ECF No. 12, PageID.943).  Such assertion is misguided.  The law is

record supports the ALJ's determination that Dr. Tarakji's opined limitations were unsupported by his own findings, as well as inconsistent with other treatment records reflecting normal objective findings and other medical opinions assessing far less restrictive limitations than Dr. Tarakji.[6]

<u>Alternating Positions</u>

Plaintiff first argues that although the ALJ limited her to sedentary work, she requires the "need to alternate between sitting, standing, and walking due to her back condition with sciatica and chronic radiculopathy into her lower extremities." (ECF No. 12, PageID.945). In support of her argument, Plaintiff primarily relies on Dr. Tarakji's January 2021 opinion, in which he opined that Plaintiff can walk "1-2 block[s]" "without rest or severe pain"'; she can sit for 15 minutes at one time before needing to get up; she can stand for 15 minutes at one time before needing to sit down or walk around; she can

---

clear that it is the Commissioner's burden at Step 5 to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC and considering relevant vocational factors," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007), but as to an alleged error in the ALJ's RFC finding, it is *Plaintiff* who "bears the burden of proving the existence and severity of limitations caused by her impairments" and that [she] has a more restrictive RFC than that assessed by the ALJ," *Lee v. Comm'r of Soc. Sec.*, No. 19-10337, 2020 WL 1139710, at *6 (E.D. Mich. Mar. 9, 2020) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003), and *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).

[6] To the extent Plaintiff points to her subjective complaints as evidence of a need for a more restrictive RFC, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (PageID.50). As the Commissioner correctly argues, Plaintiff "failed to challenge" such a finding, and therefore waived the issue. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived). In any case, "ALJs are not required to accept a plaintiff's subjective complaints as support for a more restrictive RFC." *Jones v. Comm'r of Soc. Sec.*, No. 20-11851, 2021 WL 4205061, at *4 (E.D. Mich. June 30, 2021).

"sit" and "stand/walk" for "less than 2 hours" total with normal breaks in an 8-hour workday; she needs to walk for 5 minutes every 20 minutes; she needs a job that permits shifting positions "at will" from sitting, standing, or walking; she needs to take 15 minutes of unscheduled breaks "often" during an 8-hour workday; and she does not need to elevate her legs.  (PageID.918).  As detailed above, the ALJ found Dr. Tarakji's opinion not persuasive in this regard and instead assessed that Plaintiff can perform sedentary work without requiring a specific option for alternating positions.  This aspect of the ALJ's RFC finding is supported by substantial evidence.

To start, the ALJ recognized Plaintiff's "long history of back pain" with abnormal physical exam findings in 2018 and 2019 such that she ultimately had to undergo lumbar surgery in February 2020.  (PageID.50).  On July 5, 2018, while she was still working, Plaintiff was seen at the Hamilton Community Health Network ("Hamilton") and assessed with "sciatica." (PageID.624-26).  On December 7, 2018, a few months after Plaintiff had stopped working, she "[s]lipped and fell" while helping another woman to the bathroom, and a physical exam at Hamilton indicated that her musculoskeletal system was "limited [] due to pain," she had "TTP along left lumbar musculature" and "[t]ightness noted on the left moreso than the right," "[l]imited ROM TLS Spine," "flexion 30 degrees maximum due to pain," could not laterally bend to the left due to pain, could not extend due to pain, and could not rotate to left due to pain.  (PageID.570-71).  About seven months later, on July 25, 2019, Plaintiff's back pain worsened after "her stepson pushed her down," and she was prescribed pain medication after a physical exam revealed thoracic back pain point tenderness.  (PageID.509-10).  On August 28, 2019, Plaintiff received a "Lumbar MRI"

13

reflecting "loss of lumbar lordosis, disc herniation at L2-L3, L3-L4, and L5-S1, bulging disc at L4-L5, bilateral facet hypertrophy at L2[-]3, L3-L4, L4-L5, and L5-S1, and foraminal stenosis at L2-L-3 bilateral, L3-L4 bilateral, and L5-S1 bilateral, more on the right side," which required "surgical intervention." (PageID.50; *see* PageID.794-95). On February 5, 2020, Plaintiff underwent surgical procedures for a "L2 and L3 laminectomy, L5 partial laminectomy," "Bilateral L2-3, L3-4, and L5-S1 medial facetectomy," "Removal of herniated disc at L2-3, L3-4, L5-S1," and "Decompression of the spinal cord and nerve root." (PageID.794). The surgery was completed with "no complications," and Plaintiff "tolerated the procedure well." (PageID.795). In sum, the record clearly includes medical evidence of a serious back impairment that resulted in an invasive surgery.

However, Plaintiff's condition was far from consistent during the relevant period, and ultimately, the ALJ's RFC determination is supported by substantial evidence in the record. First, the Court notes that Plaintiff stopped work because she was terminated (perhaps improperly or unfairly) for taking her daughter to the hospital, not because she was physically unable to work. (PageID.336). Indeed, during a physical a few months before her alleged onset date, Plaintiff reported "no complaints." (PageID.623). Second, when Plaintiff completed her function report, she did not check the box for "sitting" when asked to identify functions impaired by her conditions. (PageID.335). Third, at a doctor's appointment almost a full year after her alleged onset date, Plaintiff reported, "I can sit in any chair as long as I like." (PageID.701).

While Plaintiff's condition worsened at the end of 2019, leading to her February 2020 surgery, the ALJ noted that she experienced "very significant improvement and [an]

14

excellent result with regards to postoperative recovery."  (PageID.50; PageID.783-84 ("At this time the patient notes fairly significant improvement with pain complaints.  She has done well to discontinue her tramadol and is taking very sparing medication.  . . . She has had a very significant improvement and excellent result with regards to postoperative recovery. . . . ambulat[ing] without the use of an assistive device.").  The ALJ also considered Plaintiff's subsequent complaints of back pain and foot/pain numbness post-surgery in August 2020, and that she had been subsequently referred to neurology with Dr. Tarakji, and again, the evidence supports the ALJ's RFC.  (PageID.897-98, 929).  On September 4, 2020, Dr. Tarakji evaluated Plaintiff for "paresthesia involving the lower extremities," and an MRI of the LS spine showed "mild herniated disk at L2-L3 along with other herniated disks at L3-L4, L4-L5 and L5-S1 with degenerative changes." (PageID.929-30).  However, as the ALJ noted, Dr. Tarakji's motor exam only revealed some "diminished" reflexes in the lower extremities with downgoing toes bilaterally, but otherwise "normal tone, bulk and muscle strength of all muscle groups at 5/5," "normal" gait, and a negative straight leg maneuver.  (PageID.929; *see also* PageID.47 ("Post-surgical neurology records show straight leg maneuver was negative")).  Additional normal findings were found during an EMG with Dr. Tarakji on September 24, 2020, which revealed that the "nerve conduction study of both lower extremities showed normal sural and superficial peroneal sensory peak latency and amplitude," the "bilateral peroneal and posterior tibial motor study showed normal distable latency, amplitude and conduction velocity," and the "H reflexes on the posterior tibial nerves showed normal distal latency and amplitude bilaterally."  (PageID.928).  While Dr. Tarakji opined that there was

electrodiagnostic evidence of "L4/L5 and to a lesser extent L5/S1 root irritation bilaterally, mild and chronic, probably related to degenerative lumbar spine disease or postsurgical scar tissue," there was "no evidence of lumbosacral plexopathy, diffuse neuropathy or mononeuropathy of both lower extremities." (*Id.*). During a neurological follow up on November 9, 2020, Dr. Tarakji diagnosed Plaintiff with degenerative lumbar spine disease, but found "[n]o evidence of diabetic neuropathy," and even as to future treatment, Dr. Tarakji recommended that, while Plaintiff "continue with pain management for epidural steroid injection," she should "exercise routinely." (PageID.925).

In addition to the normal objective findings in Dr. Tarakji's own treatment notes, the record contains substantial evidence in the form of three additional medical opinions assessing Plaintiff with mild limitations and the ability to perform a reduced range of *light work*, which supports the ALJ's *even more restrictive* RFC of a reduced range of *sedentary work*. First, on October 1, 2020, Dr. Nims performed a physical exam of Plaintiff, which revealed that she "ambulates with a normal gait, which is not unsteady, lurching, or unpredictable," she "does not require the use of a handheld assistive device," she "appears stable in the standing, sitting, and supine positions." (PageID.880). This was consistent with Dr. Nims' interview of Plaintiff during which she reported that she "drive[s] a car" and "is able to do vacuuming, sweeping, and household chores," and "denie[d] any problems with sitting . . ." (PageID.878). An exam of Plaintiff's lower extremities revealed "no tenderness, redness, warmth, swelling, fluid, laxity, or crepitus of the knees, ankles or feet," and there was "no calf tenderness, redness, warmth, cord sign, or Homans sign." (PageID.881). There was also no tenderness in her cervical spine, her dorsolumbar spine

had "normal curvatures," there was "no evidence of paravertebral muscle spasm," "no tenderness to percussion of the dorsolumbar spinous processes," and she was "able to stand on one leg at a time without difficulty," despite a "positive straight leg raising test at 60 degrees in the sitting and supine position bilaterally." (*Id.*).  She was also able to "walk on her toes and heels, bend and perform tandem gait, but [] squat only half way."  (*Id.*).  The ALJ found persuasive Dr. Nims' opinion that, based on such findings, Plaintiff was "mildly limited with squatting" in the lower extremities, and would be "at least mildly impaired" in performing work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling, as well as pushing and pulling heaving objects. (PageID.882; *see also* PageID.883-86).  Such findings and opinion adequately support the ALJ's decision not to include in the RFC an option for Plaintiff to alternate positions "at will."

Second, state agency physician Dr. Nguyen opined that Plaintiff could perform a reduced range of light work such that she could lift or carry 20 pounds occasionally and 10 pounds frequently, she could stand and/or walk for 6 hours in an 8-hour workday, she could sit for 6 hours in an 8-hour workday, she was not limited in pushing or pulling, and she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds due to lower back pain from herniated disc and her obesity.  (PageID.92-95).  The ALJ found this opinion only partially persuasive and assessed *more restrictive limitations*, stating that "as to lifting and postural limitations . . . hearing level evidence supports a decreased ability to stand/walk, use foot control and upper extremities as shown on updated neurology treatment records including positive

findings on clinical examinations and objective evidence of additional diagnoses and symptoms." (PageID.52 (citing to Dr. Tarakji's treatment notes in Exhibit "19F")).

Finally, state agency physician Dr. Blum, opined that Plaintiff could perform a reduced range light work, including that she could lift or carry 10 pounds occasionally and less than 10 pounds frequently, she could stand and/or walk for 2 hours and sit for 6 hours in an 8-hour workday, she was "limited in [both] lower extremities" in pushing or pulling, she could occasionally climb ramps and stars, balance, stoop, kneel, crouch, crawl, and she could never climb ladders, ropes, or scaffolds. (PageID.124-27). The ALJ found this opinion persuasive as to the "additional limitations including standing/walking 2 hours of an 8-hour day and occasional use of foot controls" as "supported by explanation and consistent with the record," but again assessed more restrictive limitations after considering the overall record and physical exam findings showing "normal power and motor examinations [was] more consistent [with] frequent lifting of 10 pounds based on the longitudinal record and hearing level evidence and examinations." (PageID.52).

In sum, the law provides that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted). Here, the ALJ properly accounted for the totality of the record evidence, and her decision not to include in the RFC an option for alternating positions is supported by substantial evidence.

<u>Limited Use of Upper Extremities</u>

Plaintiff next argues that she has "significant difficulty with [] handling, feeling, and

18

reaching with her upper extremities" (ECF No. 12, PageID.948), and that the ALJ erred in finding that she "can frequently handle and finger bilaterally" and has no specific limitations for reaching (PageID.49). In support of her argument, Plaintiff mainly points to her diagnosis of carpal tunnel syndrome and to Dr. Tarakji's opinion as to the limitations of her upper extremities. (PageID.920). However, substantial evidence in the record supports the ALJ's RFC finding as to Plaintiff's upper extremities and her determination that Dr. Tarakji's opined limitations in this regard were unpersuasive.

At a July 2018 physical, Plaintiff had no complaints and denied any muscle weakness. (PageID.623). In her function report, Plaintiff did not check the boxes for "reaching" or "using hands" when asked to identify functions impaired by her conditions. (PageID.335). And, a September 2019 physical exam for "Motor – Upper Extremities" with neurosurgeon Dr. Dali Yin, M.D., indicated normal findings, including that Plaintiff "move[d] all four extremities with full strength" and had "5/5" strength bilaterally in her deltoids, hand grip, hand intrinsics, triceps, wrist flexors, wrist extensors, finger flexors, finger extensors, finding abductors, and thumb abductors. (PageID.690-91). One year later, in September 2020, Dr. Tarakji performed a motor exam reflecting similar normal findings, including "normal tone, bulk, and muscle strength of all muscle groups," as well as a sensory examination finding "both upper extremities" to be "normal." (PageID.929).[7]

---

[7] While Plaintiff notes that Dr. Tarakji found "deep tendon reflexes [] 1+ in the upper extremities," she concedes that such finding merely indicates a "present response which may or may not be normal." (ECF No. 12, PageID.948 n.1). Moreover, even if the positive Tinel and Phalen signs indicated a diagnosis of carpal tunnel syndrome, the mere diagnosis of an impairment does not say anything about its *functional limitations*, which the claimant has the burden of proving. (*Id.*,

Similar normal findings were documented during an October 1, 2020, exam with Dr. Harold Nims.  (PageID.880-81).  An exam of Plaintiff's upper extremities revealed that her "shoulders, elbows and wrists [were] non-tender," there was "no redness, warmth, swelling or nodules," and she had "normal" strength in her shoulders.  (*Id.*).  An exam of her hands revealed "no tenderness, redness, warmth or swelling," "no atrophy," the ability to make a fist bilaterally, "5/5" finger squeeze bilaterally, grip strength was "normal and graded 5/5 bilaterally," and the ability to "write with the dominant hand" and "pickup coins with either hand without difficulty."  (*Id.*).  While Dr. Nims did note "some very mild limitation in shoulder bilaterally," he only opined that Plaintiff's ability to perform work-related activities such as pushing and pulling heavy objects was "at least mildly impaired" and he did not opine any limitations concerning reaching, handling, or feeling. (PageID.882).  To the contrary, the significant normal findings documented above in his exam provide substantial evidence in support of the ALJ's RFC finding.  (PageID.881).

Dr. Tarakji's own treatment notes do not reflect that more restrictive limitations than those assessed by the ALJ were warranted.  For instance, on October 15, 2020, Dr. Tarakji performed an EMG of Plaintiff's upper extremities, which indicated there was "abnormal prolonged median sensory peak latency with borderline amplitude on the right," but the "[l]eft median sensory peak latency showed borderline value with normal amplitude," "[b]ilateral ulnar and radial sensory peak latency and amplitude [] within normal limits," and "[b]ilateral median, ulnar, and radial motor study show[ing] normal distal latency,

---

PageID.948 n.2).  *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... of course, says nothing about the severity of the condition.").

amplitude and conduction velocity." (PageID.927). He also found "no evidence of cervical radiculopathy, brachial plexopathy, diffuse neuropathy or other mononeuropathy of both upper extremities." (*Id.*). During a follow up on November 9, 2020, Dr. Tarakji reviewed the results of Plaintiff's "EMG of the upper extremities showing evidence of bilateral carpal tunnel syndrome," found there was "[n]o need for carpal tunnel surgery," and instead recommended only conservative treatment in the form of "hand braces with B6 vitamin." (PageID.925 (still "[n]o evidence of cervical radiculopathy"); *see Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808-09 (6th Cir. 2012) (conservative and routine treatment is a valid consideration in assessing limitations). On February 8, 2021, Dr. Tarakji reviewed Plaintiff's lab work and found "no need to repeat the median nerve block," either, indicating continued improvement of her symptoms. (PageID.922).

Finally, Plaintiff does not challenge the ALJ's reliance on the two state agency physician opinions, which serve as substantial evidence supporting the ALJ's *more restrictive* RFC finding of "frequent handle and finger bilaterally." On February 19, 2020, state agency physician Trinh Nguyen, D.O. opined Plaintiff was limited to a reduced range of light work but was "unlimited" in her ability to "Push and/or pull (including operation of hand and/or foot controls)" other than for lifting and carrying (PageID.93), while state agency physician Dale Blum, M.D. opined that Plaintiff was limited to a reduced range of light work but her ability to push and/or pull (including operation of hand and/or foot controls) was "Limited in lower extremities" only. (PageID.125).[8]

---

[8] To the extent Plaintiff faults the ALJ for not asking the VE hypothetical questions including more restrictive limitations (*See, e.g.*, ECF No. 12, PageID.949), "[i]t is well established that an ALJ

In sum, Plaintiff's broad assertion that the ALJ's RFC should have included more restrictive limitations for feeling, handling, or reaching does not put into dispute the substantial evidence supporting the ALJ's RFC. *See Cutlip*, 25 F.3d at 286 (stating the Commissioner's decision "must be affirmed" if it is supported by substantial evidence "even if the reviewing court would decide the matter differently and even if substantial evidence supports the opposite conclusion.").

<u>Need for Extra Breaks, Time Off Task, Absences</u>

Finally, Plaintiff argues that the ALJ "did not account for time off task or absences within her RFC assessment." (ECF No. 12, PageID.951). Again, Plaintiff primarily relies on the opinion of Dr. Tarakji, who opined that Plaintiff's symptoms affected her "attention and concentration" such that she would likely be "off task" for "25% or more" of the workday, and that she was incapable of even "low stress" jobs due to "chronic back pain" and "carpal tunnel syndrome." (PageID.918).

In challenging the RFC, Plaintiff broadly contends that she "would be excessively off task and/or absent from work" due to "a combination of her impairments and related symptoms." (ECF No. 12, PageID.951). But her conclusory argument is not objective evidence demonstrating that her RFC required more breaks and absences. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence."). The same applies to her speculative assertion that her hidradenitis suppurativa

---

may pose hypothetical questions to a vocational expert and is *required to incorporate only those limitations accepted as credible by the finder of fact*," *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (emphasis added).

would "surely" require her to "be off task to some degree due to taking breaks to drain and clear her abscesses" and would cause her to be absent from work "at the onset of an outbreak and/or if an infection develops."  (ECF No. 12, PageID.952).

To the contrary, frequent exam findings during the relevant time period indicate Plaintiff had no skin rashes or lesions.  (*See, e.g.,* PageID.624-26 (skin "intact without lesions or rashes" in July 2018); PageID.571 (same in December 2018); PageID.671 (no skin rash or lesion in November 2019); PageID.688 (no skin rash or lesion in December 2019)).  While Plaintiff's surgery was initially delayed because she required dermatology treatment, the ALJ found that she did in fact receive treatment in January 2020 for "skin lesions on the right arm and left shoulder" which "had been present for many years with the most recent treatment 10 years prior," and after treatment, her skin lesions "cleared" by February 2020 and "[s]he did not return[] to dermatology for over a year and in January 2021, no rashes or lesions were noted on examination."  (PageID.49; PageID.738 (dermatology visit on January 8, 2020, for "Hidradenitis Suppurativa" and recommended to "cleanse" with "anti-bacterial washes"); PageID.766 (treatment record on January 22, 2020 reflecting physical exam findings of "no skin rash, or lesion."); PageID.906 (dermatology visit on January 20, 2021, with exam finding no evidence of skins lesions or rashes)).  Moreover, to the extent Plaintiff points to her function reports and subjective complaints of depression and anxiety as suggesting that she would be "off task during a workday," the ALJ expressly found her subjective statements to be inconsistent with the record (PageID.50), a finding Plaintiff did not challenge.

Finally, Plaintiff relies on Dr. Tarakji's statement that "depression" affected her

"physical condition." (PageID.918). But, again, the ALJ specifically found that Dr. Tarakji's opinion as to absences were "extreme," and substantial evidence in the form of numerous treatment records between July 2018 through September 2020 – including Dr. Tarakji's – reflect exam findings that Plaintiff was in "no acute distress," was "alert and oriented x 3," was "alert and cooperative," had a "pleasant" and "appropriate" mood, and had "normal" affect, attention span, and concentration. (*See, e.g.*, PageID.624-26 (July 2018 exam at Hamilton Community Health Network); PageID.571 (December 2018 exam at Hamilton); PageID.510 (July 2019 exam at Hamilton); PageID.671 (November 2019 exam with Dr. Sushruth Shenava, M.D.); PageID.688 (December 2019 exam at Insight Institute of Neurosurgery and Neuroscience); PageID.929 (September 2020 neurological exam with Dr. Tarakji finding "alert and oriented x 3 with normal mentation and cognition). Based on all of the above, Plaintiff has failed to meet her "burden of proving the existence and severity of limitations caused by her impairments" such that she required "a more restrictive RFC than that assessed by the ALJ" as to time off task or absences. *See Lee*, 2020 WL 1139710, at *6.

In conclusion, substantial evidence in the record supports the ALJ's RFC finding and her handling of Dr. Tarakji's opinion. While Plaintiff contends that there is some evidence in the record that conflicts with the ALJ's RFC finding, where "the ALJ's opinion was supported by substantial evidence, it must be upheld, despite conflicting evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: May 30, 2023                        s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                           United States Magistrate Judge


### <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should

be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 30, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
